## Bernheim, et al. v. Wallace, Judge.

(Decided January 16, 1920.)

# Action from Jefferson County for Writ of Mandamus.

1. Parties—Numerous—Right of Person Suing for a Class to Control Litigation—Dismissal or Settlement of.—A plaintiff or defendant, who is a party of record and sues under section 25 of the Code for the use and benefit of numerous other parties, may, at any time before the rights of the class for whom he sues or defends have been fixed or adjudicated by the court, dismiss without prejudice the suit or defense; but after there has been a judgment fixing the rights of the class the party of record suing for their benefit cannot dismiss or settle the suit to the prejudice of the class.

2. Corporations—Stockholders—Suit by One for Benefit of Others—Right of Plaintiff to Dismiss.—Where one stockholder, representing a class, brought a suit for their use and benefit under section 25 of the Code, he could dismiss the suit at any time before final judgment or the rights of the class were adjudicated; but after a judgment or adjudication of the rights of the class he could not make any orders or agreements prejudicial to the interests of the class.

3. Actions—Dismissal or Settlement of—Right of Parties to Dismiss.—Parties of record to a suit laboring under no disability may, at any time before the judgment, agree to its dismissal, and may, after the judgment, settle it in any way they please.

4. Actions—Dismissal or Settlement of—Rights of Parties to.—Although the Court of Appeals may specifically direct what proceedings shall be taken in the lower court to which the case is remanded, the parties to the litigation may disregard in whole or in part the directions of the Court of Appeals, and settle the litigation in any manner they may agree to.

5. Judgment—Agreed Judgment—Entry of.—The court should enter such judgments and orders as the parties of record, who are competent to act, agree to.

6. Assignments for Benefit of Creditors—Construction of Clause In.—Where a corporation assigned "all of its property of every description, real, personal and mixed" for the payment of creditors and distribution of the proceeds, this conveyed everything that it owned or had an interest in, including unliquidated claims or claims growing out of the diversion or misappropriation of funds, and the assignee assumed the duty of taking such steps as may be necessary to recover all the property conveyed to it.

7. Corporations—Stockholders—Right of Purchaser of Stock in Corporation that Has Made an Assignment.—A party, who purchases the stock of a minority stockholder in a corporation after it has dismissed a pending suit and conveyed its property to an assignee, occupies no better position than any other minority stockholder

and cannot undo what the corporation did before he purchased the stock.

8.    Mandamus—Issual of Writ by This Court Directing Judge of Circuit Court to Enter Orders and Judgments.—When the parties of record to a suit pending in a circuit court have agreed on a dismissal and settlement of the case, a writ of mandamus will issue from this court directing the judge, who refused to enter the order of dismissal and agreed judgment, to do so.

HELM BRUCE, C. B. BLAKEY, M. M. LOGAN, HENRY L. STONE and E. S. JOUETT for petitioners.

ALLEN P. DODD and HENRY S. BARKER for respondent.

Opinion of the Court by Chief Justice Carroll— Granting writ of mandamus.

The petitioners, Bernheim and others, have filed their petition in this court asking that we issue a writ directing Arthur M. Wallace as judge of the Jefferson circuit court, chancery branch, first division, to enter an order tendered by them in his court dismissing without prejudice the action of I. W. Bernheim against the Louisville Property Company, et al.; and also commanding him to enter an agreed judgment tendered at the same time the order to dismiss was offered. We are further asked to direct Judge Wallace to discharge the rules issued by him against the petitioners and to restrain him from appointing a receiver in the case.

Temporary orders were made in conformity to the prayer of the petition and the case having been prepared and submitted for final judgment, we will now hand down our decision.

The original proceeding instituted in this court grew out of the following state of facts. Some years ago a suit was filed in the court of Judge Wallace by I. W. Bernheim, a minority stockholder in the Louisville Property Company, a Kentucky corporation, suing in his own right, and in behalf of all other minority stockholders, seeking to oust the directors of the corporation, who had been elected by a majority of the stockholders; to annul the conveyance made of many parcels of real property by the Louisville Property Company to Thomas P. Cairns; to wind up the affairs of the Louisville Property Company, which were alleged to have been managed by its directors solely in the interest and for the benefit of

the Louisville and Nashville Railroad Company in disregard of its own welfare and to the prejudice of the minority stockholders; and to have an accounting for the Louisville Property Company against the directors of the company and against the railroad company.

When this cause came on to be heard by Judge Wallace he dismissed the petition of Bernheim, except as to one item about which there was no dispute.

Thereafter, Bernheim, yet suing for himself and representing by permission of the lower court the other minority stockholders, brought the case here on appeal, and in an opinion delivered by this court in May, 1919, that may be found in 185 Ky. 63, the judgment rendered by Judge Wallace, except as to one item involving $102,455.88, was reversed and the case remanded to his court with directions to cancel the deed made by the Louisville Property Company to Cairns; to appoint a receiver for the Louisville Property Company; to have an accounting made by its directors and the Louisville and Nashville Railroad Company; and to take such other steps as might be necessary to a final settlement of the affairs of the Louisville Property Company and the distribution of its assets among the persons entitled thereto.

In due time the mandate from this court issued, and on November 6, 1919, Bernheim, the Louisville Property Company, the Louisville and Nashville Railroad Company, the individuals sued, and the heirs of Cairns, who had in the meantime died, through their respective attorneys came into Judge Wallace's court, filed the mandate of this court, and tendered to Judge Wallace an order "dismissing without prejudice so much of the above styled suit as seeks the appointment of a receiver, a reference to the master, an accounting, the winding up of the corporation's business and the distribution of its assets, and so much thereof as seeks a recovery of any sum against the Louisville and Nashville Railroad Company and the defendants, M. H. Smith, W. L. Mapother, W. W. Thompson, Chas. Haydon, W. A. Northcutt, C. O. Bradford and C. J. Weis, or any of them," with a request that it be entered; and at the same time tendered, with a motion that it be entered, the following judgment, which had been agreed to by Bernheim, yet representing all the minority stockholders, the Louisville Property Company, the railroad company, and the individual defendants:

"Thereupon, in pursuance of said mandate and the opinion of the Court of Appeals, delivered May 23, 1919, a copy of which is also filed and made a part of the record in this case, it is now adjudged by the court that the judgment entered herein on April 20, 1918, and from which plaintiff appealed, be and the same is hereby set aside and held for naught, except (1) in so far as the said judgment adjudged the recovery on behalf of the defendant, Louisville Property Company, against the defendant, Louisville & Nashville Railroad Company, of $39,542.11 on account of the purchase of certain property, situated in Knoxville, Tennessee, and (2) except in so far as said judgment adjudged that plaintiff's petition be dismissed as to the item of $102,455.88, with interest thereon, which the plaintiff sought to recover for the use and benefit of the defendant, Louisville Property Company, and which grew out of the transfer on May 31, 1908, to the defendant, Louisville & Nashville Railroad Company, of $102,455.88, said sum representing the surplus appearing on the books of the defendant, Louisville Property Company, as of March 1, 1908, in which two respects the said judgment of April 20, 1918, shall remain in full force and effect.

"It is further adjudged that the judgment entered herein on June 4, 1918, with respect to the matter of costs, be and the same is hereby set aside and held for naught.

"It is now further adjudged in pursuance of said mandate and opinion that each and all of the following deeds and instruments of writing be and the same are hereby cancelled, set aside, and held for nought, to-wit:

"1. The several deeds dated October 16, 1911, made by the defendant, Louisville Property Company, to Thomas Cairns, since deceased, and whose widow, Flora D. Cairns, and children and heirs have been made defendants and brought before the court herein, by which deeds the defendant, Louisville Property Company, undertook to sell and convey to said Thomas Cairns certain lands and mineral rights, therein fully described, situated in various counties in the state of Kentucky, which deeds are of record in the offices of the clerks of the county court of the below named counties, respectively. . . .

"It is further adjudged that the plaintiff, I. W. Bernheim, recover all his costs herein (to be taxed by the clerk) of the defendants, Louisville & Nashville Railroad

Company and the Louisville Property Company, for which execution may issue.

"Thereupon, came the plaintiff by his counsel, Clayton B. Blakey, and on his motion this action as to all other claims asserted and all other relief sought not covered by the foregoing judgment is now dismissed without prejudice."

At the same time it was brought to the attention of Judge Wallace that on the preceding day the Louisville Property Company, acting through its board of directors with the consent of a majority of its stockholders, as well as Bernheim and all other parties of record in the suit, had executed to the United States Trust Company, a solvent and responsible corporation having the authority to act as assignee and settle estates, a deed of assignment conveying "all of its property of every description —real, personal and mixed—and wheresoever located, to the assignee, its successors and assigns, absolutely and in fee simple, in trust for the payment of the debts of the assignor and the expenses of administration and the distribution of the remainder, if any, of the proceeds of the sale of the assignor's property to its stockholders ratably according to their holdings at the time such distribution is made; the assignee, its successors and assigns being hereby specifically authorized to sell all of the property herein conveyed at public or private sale, and in such parcels and upon such terms as it may deem most advantageous."

Judge Wallace took the matter under advisement and on November 15, overruled Bernheim's motion to dismiss the case without prejudice, as well as his motion to enter the judgment before mentioned; and at the same time issued rules against I. W. Bernheim, certain officers and directors of the Louisville Property Company, and the president of the United States Trust Company, returnable November 18, "to show cause, if any they have or can, why they shall not be punished for contempt in wrongfully and unlawfully obstructing the court in its duty by conveying by deed of assignment the property of the Louisville Property Company to the United States Trust Company;" on November 17th he overruled a motion for an appeal made by the persons against whom the rules were directed to issue; and at the same time overruled the motion of Bernheim to grant him an appeal to the Court of Appeals from the order entered on Novem-

ber 15th overruling his motion to enter the agreed judgment and dismiss the action without prejudice.

In the course of the opinion handed down by Judge Wallace setting forth the reasons why he refused to enter the agreed judgment and dismiss the action without prejudice, and ordered rules to issue against Bernheim and the directors of the Louisville Property Company, he said:

"The rule is elementary that the plaintiff may dismiss his case without prejudice at any time before a judgment or final submission, provided the interests of others have not accrued or become fixed; but whether, after a judgment below, followed by an appeal, a reversal with a mandate from the Court of Appeals, specifically adjudging plaintiff and those he represents certain specific rights and remedies for the matters complained of, the plaintiff, who not only sues for himself, but for a large number of unnamed and unknown persons, can, after all of the principles involved in the litigation have been determined by the Court of Appeals, dismiss the action as to them or dismiss it for himself even, is a different proposition. . . .

"The plaintiff, Bernheim, as a minority stockholder in the Louisville Property Company, instituted this action both for himself and all other stockholders in interest with him to oust the directors, to annul a conveyance of the property of the company in Kentucky to Thomas P. Cairns, and to wind up the affairs of the corporation, alleging that the directors have managed the property solely in the interest of the Louisville & Nashville Railroad Company in disregard of the welfare of the company and to the injury of plaintiff and the other stockholders of the corporation.

"An accounting for the property company against its directors and against the Louisville & Nashville Railroad Company and its directors was also prayed for."

Then after quoting certain portions of the opinion of this court, he further said:

"It is apparent from the foregoing excerpts that the Court of Appeals has settled all of the questions of law in this case and directed definitely the judgment to be entered and the procedure thereafter to be had. There are no judicial questions left open; all that remains to be done is either clerical or administrative, and this, in the court's opinion, is in legal 'effect a final judgment in the

action and precluded the plaintiff by any sort of arrangement with the defendant, to set aside, annul or evade the judgment of the Court of Appeals, nor has he the power to set aside or annul the rights of his co-plaintiffs, therein established and fixed, and thus determined, who he has brought into court and who have gone with him through all the procedure of this case.'

"Nor can this court submit to the high handed and contemptuous treatment which it and the mandate of the Court of Appeals has received at the hands of these parties, plaintiff and defendant. This property is all in the hands of the court and a specific and imperative mandate has been sent down by the Court of Appeals directing in specific language and detail what the lower court shall do. The execution of this mandate is my plain duty, and yet I find myself obstructed in the performance of this duty by the unlawful acts of the parties hereto in conjunction with the United States Trust Company. . . .

"The plaintiff brought the minority stockholders into this court to help him bear the expense of the litigation and to give moral and legal influence to his litigation. After the original judgment below their rights were fully foreclosed by it. Not one of them could sue on his own behalf; the adverse judgment was *res judicata* as to them all and had that judgment been affirmed their right to an accounting or to have the property sold for distribution of the proceeds would have been lost. The Court of Appeals reversed the judgment and crystalized their right to a sale and an accounting and this right cannot now be bargained away without their express consent by the plaintiff by any sort of arrangement with the defendants; when the property unlawfully taken from the jurisdiction of the court in part through the connivance of the plaintiff is restored by the guilty parties to its original status the court will entertain a motion by the plaintiff to dismiss his own action."

Thereafter, and on November 18, Bernheim, the property company, and the persons against whom the rules were issued, filed their petition in this court.

In his answer to the petition filed in this court Judge Wallace, after denying certain material averments, further said that Bernheim in his petition filed in the court of Judge Wallace alleged:

"That the Louisville & Nashville Railroad Company was indebted to the Louisville Property Company in very

large sums and to-wit. more than $450,000.00 for use of
the property of the Louisville Property Company, and
the said plaintiffs, in said action, asked, first, for an ac-
counting to ascertain the amount due by the Louisville &
Nashville Railroad Company to the Louisville Property
Company, and after that amount had been ascertained,
prayed judgment against the Louisville & Nashville Rail-
road Company or the said named individuals as directors
of the Louisville Property Company for the amount
found to be due on the accounting to the Louisville Prop-
erty Company. . . . That if the court should sustain the
motions of the attorneys for the plaintiffs, it would result
in a dismissal without prejudice of the action and sacri-
fice thereby the entire claims of all the stockholders of
the Louisville Property Company as against the Louis-
ville & Nashville Railroad Company for an accounting,
and it further appeared to the court from the record and
from the verified petition of the plaintiff that the Louis-
ville & Nashville Railroad Company was justly due the
property company more than $450,000.00, or was due the
Louisville Property Company for the use of its property
an enormous sum not yet ascertained, and would further
sacrifice the rights of the stockholders as to a receiver
and immediate liquidation of the said property, and as
a result of all of which this court concluded that the
rights of the stockholders of the property company were
so material and that the interest of the stockholders of
the property company amounted to so much, that this
defendant felt that the action should not be dismissed
until and after all of the stockholders of the Louisville
Property Company had the opportunity to be heard and
did not feel that it had the legal right to dismiss the ac-
tion in accordance with the motions unless and except all
of the stockholders of the Louisville Property Company,
who were the interested plaintiffs, joined in the said mo-
tion, and accordingly overruled the motions so made and
tendered on the 6th day of November, 1919, by his written
opinion delivered on the 15th day of November, 1919. . . .

"Defendant further says that at the time the said
conveyance was made, the said property was in the cus-
tody of this defendant as judge and that this defendant
had jurisdiction of all the parties owning said property,
as well as the property, and it appearing to this defend-
ant that the manifest purpose of said conveyance was an
effort on the part of the said named attorneys and parties

to place the property beyond the custody and control of the court without authority of law and for that reason and in order to protect himself against the parties and in order to protect the jurisdiction of this defendant as judge over the property, this defendant issued the rules against the individuals referred to in the petition, and on the 15th day of November, making said rules returnable the 18th day of November. . . ."

Thereafter, and on December 2, W. M. Duffy, who had not theretofore had any connection with the case either in the lower court or this as a party of record, or otherwise, filed in the case pending in this court his intervening petition, answer, counterclaim and cross-petition, in which he set out that he was one of the stockholders of the Louisville Property Company for whom the action was brought and prosecuted by Bernheim; that if the agreed judgment tendered in Judge Wallace's court on November 6th was entered "this petitioner's valid, adjudicated and vested rights will be destroyed, in that large claims against the Louisville & Nashville Railroad Company and the officers and directors of the Louisville Property Company will be thereby sacrificed."

He further said that it was his purpose to tender and file in Judge Wallace's court on November 29th an intervening petition and pray the court "for an order allowing this petitioner as a stockholder to prosecute the said action for and in his own behalf and for and in behalf of all the stockholders of the Louisville Property Company not appearing of record by counsel, and that if this petitioner is permitted to intervene and prosecute the said action, he will do so in good faith and for the sole purpose of protecting the rights of the stockholders of the Louisville Property Company, and for the purpose of carrying into execution the mandate of this court in the said action in the Jefferson circuit court."

The petitioners, Bernheim, and others, for reply to the answer and counterclaim of Duffy, after denying certain material allegations thereof, averred that Duffy was not on November 6, 1919, when the agreed judgment was tendered in Judge Wallace's court, a stockholder in the Louisville Property Company, nor did the company or any of its officers have any notice that he claimed to be a stockholder until November 26, 1919.

They further averred "that if the said Duffy owns any stock in the Louisville Property Company he has ac-

quired same since November 6, 1919, when the motion to enter an agreed judgment as to certain matters in the said case of Bernheim v. Louisville Property Company, and to dismiss the action so far as not covered by that judgment, was made; and that if said intervenor has acquired such stock, he was procured to acquire it solely for the purpose, and did acquire it solely for the purpose of seeking to intervene in this action and in the said action of Bernheim v. Louisville Property Company, etc., in the Jefferson circuit court for the purpose of preventing the entry of the said agreed judgment and the dismissal of said action of Bernheim v. Louisville Property Company, and of securing the appointment of a particular person as receiver of the Louisville Property Company who had been theretofore selected for that position. And petitioners believe, and have good ground to believe, and on such belief allege, that said intervenor, if he is now the owner of any stock of the Louisville Property Company, has simply attempted to buy his way into this litigation for the purpose of controlling same, and especially for the purpose of endeavoring to secure the appointment of a particular person as receiver of the Louisville Property Company, and his attempt to intervene in this cause and in the said cause of Bernheim v. Louisville Property Company in the Jefferson circuit court is not in good faith and is not for the purpose of protecting the rights of any stockholders in the Louisville Property Company.''

It further appears from the record that the holders of about 78 per cent of the total outstanding stock of the Louisville Property Company have consented to the action of its directors in executing the deed of assignment to the United States Trust Company, and also to the order of dismissal, agreed judgment and motions made in connection therewith that were tendered in Judge Wallace's court as before stated.

It further appears that the Louisville Property Company was really organized and created by the Louisville & Nashville Railroad Company and that its stock was distributed to stockholders in the Louisville and Nashville Railroad Company at the time of the organization of the property company, and that these stockholders are scattered all over the country, many of them owning only one share of the stock in the Louisville Property Company; and we may further assume that many of them, at

least 20 per cent, never heard of or knew anything about this suit of Bernheim's.

It further appears from the opinion and answer of Judge Wallace that he was influenced to refuse to permit the agreed judgment and order dismissing the suit to be entered by the apprehension that if the matter was taken out of his court, as the parties proposed to do by the judgment and deed of assignment, that the rights of the minority stockholders represented by Bernheim would not be properly protected; and by the further fact that he conceived it to be his right and duty to follow the directions of this court announced in its opinion in the Bernheim case, in conformity to which its mandate was issued.

It will be seen from what has been said that Bernheim may be said to have represented in the suit brought, and to have sued for the use and benefit of, about 20 per cent of the stockholders of the property company, which he was permitted to do under authority of section 25 of the Civil Code, providing that "If the question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable to bring all of them before the court within a reasonable time, one or more may sue or defend for the benefit of all."

That a plaintiff or defendant who is a party of record and who sues or defends under section 25 of the Code for the use and benefit of numerous other parties, who are not represented except by him, may at any time before the rights of the class for whom he sues or defends have been adjudicated by the court in which the action is pending or by the court to which an appeal may be prosecuted, dismiss without prejudice the suit or defense, we have no serious doubt. The party so suing or defending for a class unrepresented except by him brings the class into court and may take them out when he goes, if he goes out before there has been an adjudication of the rights of the class. Until there has been some adjudication of their rights it cannot be said that they have any standing in court except through the party of record, and are subject to his control. Cook on Stockholders, sec. 748; Innes v. Lansing, 7 Paige 583; Brinkerhoff v. Bostwick, 99 N. Y. 194; Encl. of Pleading and Practice, vol. 15, p. 628; Atlas Bank v. Nahant Bank, 23 Pickering 492; Belmont Nail Co. v. Columbia Iron Co., 46 Federal 336;

Thompson v. Fisher, 33 N. J. Eq. 480; Derby v. Gale, 13 Hun. 273. In Daniel's Chancery Practice, vol. 1, page, 794, the rule is thus announced, "where a plaintiff sues on behalf of himself and all other persons of the same class, although he acts upon his own mere motion, and retains the absolute dominion of the suit until the decree, and may dismiss the bill at his pleasure, yet, after a decree, he cannot by his conduct deprive other persons of the same class of the benefit of the decree, if they think fit to prosecute it."

In Hirshfeld v. Fitzgerald, 157 N. Y. 166, 46 L. R. A. 839, a leading case on this subject, the court quoted with approval the following from the Brinkerhoff case, *supra*:

"It is true that at any time before judgment the original plaintiff, before the others were made parties, could have discontinued the suit, or could have settled his individual damages with the defendants, and have executed a release, which would have been effectual as to him. But, if he had prosecuted the action to judgment, then the judgment would have been for the benefit of all the stockholders, and he would then have ceased to have control over it, because the rights of the other stockholders would at once have attached thereto. The bringing of the action by the original plaintiff did not prevent the other stockholders from bringing similar actions. But the moment a judgment should be recovered in one action for the benefit of all the stockholders, the proceedings in all the others would be stayed."

And, so in this case, Bernheim, against whom no claim was asserted by any defendant, might have dismissed without prejudice the action at any time after he brought it and at any time while it was pending on appeal in this court, before the opinion was handed down by this court; and it would necessarily follow that its dismissal would carry with it the dismissal of the action as to the entire class for whose benefit he sued.

Furthermore, until the opinion was handed down Bernheim and the defendants were the only parties of record and there could of course be no obstacle in the way of parties of record to a suit, laboring under no disability and suing or defending for themselves alone, agreeing at any time to the dismissal of the action or defease, with or without prejudice, because the absolute control and disposition of litigation at every stage of the

proceedings from its inception to and after the final judgment is in the power of the parties to the record.

Courts were established, at least in part, for the purpose of settling disputes that people could not settle for themselves, and although parties unable to agree about matters in controversy may go into court to have their rights adjudicated, they still retain unimpaired their right to do as they please about the litigation. They may settle the matters at issue before, or at any time after a final judgment has been rendered in any way they choose, and the court has no right or power to interfere. And this right exists although the litigation has been brought to the Court of Appeals and there has been a final judgment by that court determining the rights of the parties, accompanied by directions to the lower court.

In other words, although the Court of Appeals may specifically direct what proceedings shall be taken in the lower court to which the case is remanded, or the character of the judgment that shall be entered, the parties to the litigation, if they are legally competent to act, and sue for themselves alone, may disregard in whole or in part the directions of the Court of Appeals, settle the litigation in any manner they may agree to, and ask the court to enter as its judgment the agreements they make. Karnes v. Black, 185 Ky. 410.

But of course in the absence of such an agreement the lower court must obey the directions contained in the opinion of this court. As said in McLain v. Nixon, 18 B. Mon. 769, ''The mandate of this court is imperative on the court below. It has no option to obey or disobey it. . . . It must be carried into effect by the inferior court according to its true intent and meaning.''

So that if Bernheim had been suing for himself alone we may well assume that Judge Wallace would readily have consented that any judgments or orders that the parties of record had agreed to might be entered, although the entry of such orders or judgments might have taken the case finally out of his court and entirely dispensed with the necessity of taking the further steps in the case he was directed to take by the opinion of this court and its mandate.

Having thus adjudged the questions of procedure according to our understanding of the applicable law, the only remaining question, aside from that presented by

the intervening petition of Duffy, relates to the right and duty of Judge Wallace in respect to the claims of the minority stockholders who had not appeared in the case except through Bernheim, and whose rights were definitely fixed by the opinion of this court.

It was, as we think, the duty of Judge Wallace to protect in his court the rights of the minority stockholders represented by Bernheim and to deny Bernheim or the other parties of record, or any of them, the right to enter any orders or judgments or make any settlements that would be prejudicial to the interests of these minority stockholders, or that would take from them any of the rights to which they had been adjudged entitled by the opinion of this court. Accordingly if the agreed judgment, the order of dismissal and the deed of assignment deprived the minority stockholders of any substantial benefits or advantages adjudged to them by this court Judge Wallace properly refused to permit the entry of the agreed judgment and the order of dismissal or to recognize the validity of the deed of assignment. But, on the other hand, if the rights of the minority stockholders will be as fully protected by the agreement made between Bernheim and the other parties and the proceedings taken thereunder, as they would be if the matter remained in Judge Wallace's court and under his control, he committed error in refusing to permit the order of dismissal and the agreed judgment to be entered and in issuing rules for contempt.

Let us see now how this matter stands. The agreed judgment expressly preserved all the rights to which the minority stockholders were adjudged by this court except that it did not make any mention of the claim of some $450,000.00 asserted on behalf of the Louisville Property Company through Bernheim against the directors of the property company and the Louisville and Nashville Railroad Company, and which was attempted to be dismissed without prejudice, or in terms direct that the assignee should make the accounting concerning this claim that was directed in the opinion of this court. But it was not, as we will later show, necessary that any specific mention should have been made of this claim or any directions concerning it be given the assignee, as the dismissal of the action without prejudice left it standing unaffected by the order of dismissal or the judgment.

Repeating now the clause in the deed of assignment reciting that the Louisville Property Company "sells, assigns, aliens, conveys and transfers" to the United States Trust Company "all of its property of every description—real, personal and mixed—and wheresoever located, to the assignee, its successors and assigns, absolutely and in fee simple, in trust for the payment of the debts of the assignor and the expenses of administration and the distribution of the remainder, if any, of the proceeds of the sale of the assignor's property to its stockholders ratably according to their holdings at the time such distribution is made."

It will be seen that the Louisville Property Company conveyed everything that it owned or had an interest in to the assignee, and clearly the words of conveyance are broad enough to include any claim or demand the property company had against its directors or the Louisville and Nashville Railroad Company, growing out of the mismanagement of its affairs, or the wrongful diversion or appropriation of its property or assets of any kind by these parties; or in other words, broad enough to transfer to the assignee the claim asserted against the directors of the Louisville Property Company and the Louisville and Nashville Railroad Company by Bernheim.

In short, the assignee has the same right and power to assert and recover these claims or demands, and to take all steps that may be necessary to do so, that Bernheim would have had, or that a receiver appointed by the court would have, and it will be held to the same strict accountability in the execution of the trust as would a receiver acting under the orders of the court. In Cartmell v. Commercial Bank & Trust Co., 153 Ky. 798, concerning the appointment of a receiver for an insolvent bank, this court pertinently said, "The object and aim of the law, in the appointment of a receiver, is to see that the assets of the institution, in charge of which he is placed, are properly, honestly, and economically administered. The ends of the law are satisfied, if the estate is administered in this way, whether the person charged with its administration be termed a banking commissioner, a trustee, or an assignee. The duties are the same. If any difference is to be found, it is in favor of the liquidation of banks, through and under the direction of the banking commissioner rather than under a re-

ceiver appointed by the court, for the former plan is not only more expeditious and less cumbersome but is undoubtedly less expensive.''

Accordingly it will be the duty of the assignee to diligently, faithfully and carefully inquire into the nature and condition of these claims or demands, if any there be, and take such action as may be necessary and proper to recover them for the use and benefit of the stockholders of the property company, and consequently the stockholders will not suffer any loss on account of the failure to preserve in the agreed judgment their right to prosecute the claim asserted by Bernheim against the directors of the company or the L. & N. Railroad Company, or by the fact that no express mention was made of this claim in the deed of assignment..

It is also clearly shown by the record that putting the property in the hands of the assignee for the purpose of winding up the affairs of the Louisville Property Company and distributing the proceeds among the persons entitled thereto in place of turning it over to a receiver would result in saving to the stockholders a sum variously estimated at from $100,-000.00 to $300,000.00; that aside from this large saving, the assignee can dispose of more advantageously and with much less cost and expense than a receiver the great amount of valuable and widely scattered real estate conveyed to it by the property company, and in this connection it might also be said that all parties agree that the assignee is a solvent, responsible institution, fully competent and equipped to discharge in a satisfactory way the trust reposed in it by the deed of assignment.

In regard to the intervening petition of W. M. Duffy little need be said. He was not the owner of any stock in the Louisville Property Company at any time before the motion to dismiss it was made in the court of Judge Wallace, as he did not become the owner of any stock until November 11, 1919, at which time he purchased two shares. Testifying very frankly as to why he became the owner of these shares he said: ''Well this stock was on the market and I bought it because I believed that if I got hold of this stock I could control the suit. Q. Why did you want to control this suit? A. Because I just thought it was a good thing and that is all. Q. Why did you think it was a good thing? A. To get in control of the minority stockholders, that was my purpose in buy-

ing, I did not think that the suit should have been dismissed. Q. So you bought the stock with the idea that by. acquiring. two shares of stock you could get into the case which the parties were seeking to dismiss and settle amicably and that you could thereby get control of the litigation? A. Yes, after that day when Mr. Bernheim and his counsel asked that the suit be dismissed, after he had fought it through the Court of Appeals successfully and after the Court of Appeals had rendered its opinion, and it looked as if Mr. Bernheim was going to get out of the case, I thought it would be to my advantage and my interest if I could secure some stock and take Mr. Bernheim's place.''

W. M. Duffy, as a stockholder in the Louisville Property Company, had of course the right to take such steps as he thought necessary to protect his interest without reference to when he became the owner of the stock, but his interest will be as fully protected and his rights as carefully saved by the arrangements made through which the suit was dismissed and the conveyance made to the assignee, as they would have been if a receiver had been appointed.

Aside from this we do not think a party who purchases stock in a corporation after the corporation has rightfully dismissed a pending suit and conveyed all of its property to an assignee for the purpose of winding up its affairs is in a position to undo what the corporation has lawfully done. He occupies no better position than any other minority stockholder. It is true that he succeeded by his purchase to all the rights and privileges of his vendor, but his vendor was-one of the class represented by Bernheim and when the disposition that we have set out was made of the case the rights of his vendor were determined, and Duffy, as a purchaser after this, is bound by what was done.

The only remaining question is the relief to which the petitioners are entitled, and as to this there is no difficulty.

The power of this court to issue a writ of mandamus directing the judge of a circuit court to dismiss a suit pending in his court, when the order of dismissal has been approved by the parties, and to enter therein a judgment that has been agreed upon by all the parties to the suit, they being competent to enter into agreements, is not only authorized by section 110 of the Constitution

but sustained by many opinions of this court. Louisville and Nashville R. R. Co. v. Miller, 112 Ky. 464; Kelly v. Toney, Judge, 95 Ky. 338; Hindman v. Toney, Judge, 97 Ky. 413; Weaver v. Toney, Judge, 107 Ky. 419; Shoemaker v. Hodge, Judge, 111 Ky. 436; Com. v. Tarvin, Judge, 114 Ky. 877; Davidson v. Lewis, Judge, 159 Ky. 789; Ohio River Contract Co. v. Gordon, 170 Ky. 412; Casebolt v. Butler, Judge, 175 Ky. 318.

The petitioners have also asked a writ of prohibition, but we do not think it necessary to make any directions prohibiting Judge Wallace from appointing a receiver or making absolute the contempt rules issued, because the entry of the order dismissing the suit and the agreed judgment, which we have said the parties had a right to have entered, necessarily takes from Judge Wallace the right to appoint a receiver and absolves from contempt the parties ruled.

Wherefore, the whole court except Judge Quin sitting, Judge Wallace as judge of the chancery branch, Louisville, Jefferson circuit court, first division, is directed to have entered on the order books of his court the orders and judgment tendered on November 6.