**ALBRECHT et al. v. BAUMAN.**

No. 8005.

United States Court of Appeals for the District of Columbia.

Argued June 9, 1942.

Decided July 29, 1942.

Mr. Robert H. McNeill, of Washington, D. C., with whom Mr. Thomas S. Settle, of Washington, D. C., was on the brief, for appellants.

Messrs. E. F. Colladay and D. C. Colladay, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice and EDGERTON and RUTLEDGE, Associate Justices.

GRONER, C. J.

The suit below was brought by Chapin B. Bauman (appellee) as the surviving member of a bondholders committee appointed under a written agreement of June 12, 1931.

Stated as briefly as possible, the facts are these. In the latter part of 1928, Properties Investment Corporation, of Delaware, made and issued collateral trust bonds in excess of a million dollars. In the early part of 1929, Washington-Pittsburgh Holding Corporation, also of Delaware, made and issued collateral trust bonds to the amount of a little less than a million dollars. Columbia Trustee and Registrar Corporation, of Maryland, was trustee in each issue. The bonds were sold to the general public through the agency of the F. H. Smith Company, also a Delaware corporation. On or before June 12, 1931, the bonds were in default, and on that day appellee, together with Frank S. Hight and Lowell Blake, all of the District of Columbia, were constituted a bondholders committee under a written agreement by which the committee was vested with complete title to the bonds deposited with it, and with power to take, in its own name, whatever action it deemed advisable to enforce the bondholder's rights. The agreement was to be for the sole benefit of the parties thereto, who were defined as those bondholders of either or both issues who deposited their bonds within a period of five years and contributed toward the expenses of the committee $1.00 for each $100 face value of bonds so deposited. Notice of the agreement was sent to all known bondholders, and there were deposited with the committee bonds of the Properties Investment Corporation in the amount of $279,700 and bonds of Washington-Pittsburgh Corporation in the amount of $242,800.

The committee, in December, 1931, instituted in the State of Delaware two identical equity suits "on behalf of themselves and all other bondholders of respondent [corporations] who are in like circumstances", one against the F. H. Smith Company and Properties Investment Corporation, and the other against the F. H. Smith Company and Washington-Pittsburgh Corporation. The complaints alleged that Smith Company was guilty of various acts of fraud in the sale of the bonds and, more specifically, that it had represented that they were amply secured by valuable securities held by the trustee, when in fact the securities so held were worthless. The prayer was that the Smith Company be decreed to hold the proceeds from the sale of the bonds in trust for the complainants and others similarly situated, as the true owners thereof, and that an order be entered restraining the Smith Company from selling, pledging, or otherwise using, any of the money or funds derived from the sale of the bonds. No relief was asked against either Properties Investment Corporation or Washington-Pittsburgh Corporation.

Three weeks after the filing of the suit a compromise agreement was made between the Smith Company and the committee, whereby the claims of the latter, which embraced only the bonds held by the committee, were settled and adjusted by the transfer to it of 15 per cent of the assets of the Smith Company, subject to certain conditions. None of the assets so transferred represented proceeds of any of the collateral securing the bonds in question. In conformity with the compromise, and no nondepositing bondholders having then or thereafter intervened as parties in either case, orders of dismissal of the suits were had at the instance of the committee. The committee continued to receive and accept deposits of bonds in accordance with the terms of the deposit agreement for the remainder of the five-year term, during which time and thereafter the property which came into its possession through the compromise was liquidated and converted into cash.

Finally, in 1940, approximately nine years after the date of the deposit agreement and the settlement with the Smith Company, appellee (as the surviving member of the committee) instituted the present suit to obtain a declaratory judgment that nondepositing bondholders had no right in the funds held by the committee, and to provide for the distribution thereof to the bondholders represented by the committee. Appellants Albrecht and James, who are nondepositing holders of some of the bonds in question, answered, alleging that appellee held the funds received in the Smith compromise as trustee for the benefit of all bondholders, and praying that the fund be distributed proportionately to all and that a receiver be appointed for that purpose. Appellee thereupon filed a motion, supported by affidavits, for summary judgment. After hearing the court below granted the motion and ordered the fund distributed only to the depositing bondholders. The case was then brought here.

On this appeal appellants insist that the committee, in filing class actions in the Delaware court "on behalf of themselves and other bondholders in like circumstances", made itself a trustee so that it could not thereafter settle its claim and dismiss the suits except in recognition of the right of nondepositing bondholders to participate in the proceeds of settlement ratably with depositing bondholders.

■ We are of opinion that the rejection of this claim by the lower court was correct. For even if it were true, which is not the case, that the suit instituted against the Smith Company, a Delaware corporation, in Delaware was, strictly speaking, a class suit, the rule in Delaware is that the plaintiff may continue, compromise, abandon, or discontinue it at pleasure unless and until a person similarly situated procures an order to be made a party to the action, or until interlocutory judgment or decree is entered. And nothing of this sort occurred in the suit under discussion. That this is the Delaware rule was held in Keller v. Wilson & Co., Del. Ch., 194 A. 45, 47, where the chancellor said:

"But assuming that the bill, notwithstanding the very definite nature of the prayers, is a class bill, does it follow that the complainants therein cannot direct its dismissal over the objections of the petitioner, a person in like class with them?

"It is thoroughly settled that a creditor who files a bill in behalf of himself and all other creditors remains in control of the suit until decree. It was said in Pemberton v. Popham, 1 Beav. 316, which was a creditor's bill, that 'until decree the other creditors had no interest in the suit.' The complainant may dismiss such a bill at any time so long as his position of dominus litis continues."

■ And so far as we are able to determine, this is also the rule in those States in which the question has arisen, was the rule of the District of Columbia[1] and the federal courts when the suit against Smith Company was dismissed, and is still the rule except insofar as Rule 23(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, now modifies it by requiring approval of the court before dismissal may be had.

While it is true that the suit in question was not a creditor's suit but one in tort for fraud, the principles applicable are the same, for each bondholder here had a separate and independent cause of action for

---

[1] In La Tourette v. Fletcher, 6 App. D.C. 324, we said "Even in the case of a creditor's bill, it has been generally held that it is subject to the control of the complainants therein, and may be discontinued at any time by them, upon satisfaction of their demand, before a decretal order shall have been made."

fraud, just as each creditor in a creditors' suit has a separate and independent cause of action on his debt. In the Delaware suit against Smith Company, the dismissal of the cause on stipulation bound only the bondholders then represented by the committee. The nondepositing bondholders were not and could not, by the mere allegation that the suit was in behalf of persons similarly situated, be prejudiced or bound in any way, and there was no more than such an allegation in the Smith suit. Neither the bringing of that suit nor the order of dismissal could have any effect upon their rights as bondholders. The language of the Supreme Court in Hamer v. New York R. Co., 244 U.S. 266, 273, 37 S.Ct. 511, 514, 61 L.Ed. 1125, is pertinent:

"But a suit by some bondholders does not, by the allegation that it is in behalf of all others similarly situated, become a class suit, binding on all."

See also Wabash R. v. Adelbert College, 208 U.S. 38, 57, 28 S.Ct. 182, 52 L.Ed. 379.

In Ayer v. Kemper, 2 Cir., 48 F.2d 11, 14, a case of the same general nature as this, and which involved a similar question, Judge Swan clearly distinguishes between a pure class suit and what he calls a spurious class suit, and points out that in the former there must be shown a single interest held by all, as, for instance, a shareholders' suit in the corporate right, or a suit by cotenants. As to the latter, he said:

"It is true that the bill charged that the defendant was in a fiduciary relationship to each of the former noteholders and that he dealt with them without disclosing information which would have influenced their sales to him; but a separate wrong was committed against each noteholder when the defendant dealt with him without disclosing the facts, and each transaction was in reality the basis for a separate suit, depending for its outcome upon how much was disclosed to the noteholder in question and any other circumstances which might affect his right. Nor is there any single fund in which all must share; on the contrary, the trust fund is separable, and Kemper must hold all that he made on resale of each note as constructive trustee for the defrauded holder of that note. The defrauded noteholders had no common fund. We may agree arguendo that Ayer might, if he chose, unite others similarly situated, but they became parties only upon intervention."

And he added that, for these reasons, the decree does not bind those who are not parties, and that even in a real class suit continuance or dismissal of the litigation remains in the hands of the party plaintiff. To the same effect is Hirshfeld v. Fitzgerald, 157 N.Y. 166, 51 N.E. 997, 46 L.R.A. 839, where it was held that a creditor, suing to enforce a stockholder's liability on behalf of himself and others similarly situated, did not become a trustee for the other creditors so that he was prevented from effecting a settlement of his own claim and dismissing the suit.

If appellants had, at any time after the institution of the suit against the Smith Company by the committee, intervened and been made parties thereto, as they had a right to do, or if they had deposited their bonds and agreed to be bound by the committee's action, the case would present a different aspect. They having failed to take advantage of either opportunity, the committee had a complete right to bargain with reference to its own claims and then to execute a release and discontinue the suit, as in any ordinary litigation. Furthermore, the nondepositing bondholders themselves could have instituted independent suits at any time within the statutory period notwithstanding anything that was done in the Smith suit. See Lee v. City of Casey, 269 Ill. 604, 109 N.E. 1062; Wilson & Shober v. Bank of Lexington, 77 N.C. 47; Rogers v. Hill, D.C., 34 F.Supp. 358, 369; Compton v. Jesup, 6 Cir., 68 F. 263; Wabash R. v. Adelbert College, supra; Bernheim et al. v. Wallace, 186 Ky. 459, 217 S.W. 916, 8 A.L.R. 938; Piedmont, etc., Co. v. Maury, 75 Va. 508; Notes, 8 A.L.R. 950, 91 A.L.R. 594.

Finally, the committee had power to settle only the claims it represented. It had no authority to settle appellants' claims. The deposit agreement, which expressly excluded all nondepositing bondholders, was the measure of its authority.

Appellants argue that the payment in compromise was an illegal preference by an insolvent debtor. There are a number of answers to this contention. (a) Smith Company is not a party to this suit, and consequently we cannot determine here the question of its solvency. (b) Appellants are not creditors of Smith Company. The bonds they hold were not issued by Smith Company, and the latter is not liable on the contract created by their issue. Smith's liability, as asserted in the

suit against it, grew only out of the charge of fraud in the sale of the bonds. Unless and until appellants obtain a judgment against, or settlement from, Smith Company, they have no standing to question any disposition of its funds. See Schall v. Camors, 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247. (c) Appellants are here claiming under the compromise. Certainly, in the circumstances, they will not be heard to allege its illegality. (d) In any case, the events out of which the compromise arose occurred more than ten years ago. It is now too late to question that transaction.

In view of all these circumstances, we are of opinion that the District Court was entirely correct in holding that the fund in the hands of the committee is the property of the depositing bondholders and that appellants have no interest or right therein. In this view, we need not discuss the refusal of the court to appoint a receiver of the fund or the other matters argued in the brief.

Affirmed.