### TUDOR v. RAUDABAUGH et ux.

(District Court, D. Montana. January 18, 1922.)

No. 815.

1. **Vendor and purchaser ⬅37(6)—Misrepresentation, that vendor is financially able to furnish water perpetually, is material.**

   Where the vendor of land in an arid country agreed to furnish water perpetually, the value of the contract was mainly the covenant for the water, and a misrepresentation that the vendor was financially solvent, and able to perform its covenant to that effect, was material.

2. **Vendor and purchaser ⬅119—Delay in seeking rescission, pending bankruptcy proceeding against vendor, held not laches.**

   Where the purchasers of land with perpetual water right discovered the falsity of the vendor's representation it was financially able to perform its covenant to furnish the water perpetually only a short time before the vendor's bankruptcy, the failure to rescind pending the bankruptcy proceedings, during which time it was hoped some disposition of the property would be made whereby the water contract could be performed, was not such laches as barred the purchaser's right to rescind.

3. **Vendor and purchaser ⬅119—Delay in rescinding, to be laches, must injure the other party.**

   Laches of a buyer is not mere delay in rescinding, but is delay which injures the other party.

4. **Vendor and purchaser ⬅114—Acceptance of defective performance of water contract held not to waive rescission.**

   The fact that the purchasers of land with a perpetual water right accepted for several years an imperfect performance of an agreement to furnish the water, but without intent to waive their rights, and to give time in which to remove the cause of failure, is not a waiver of their right to rescind for nonperformance.

5. **Vendor and purchaser ⬅337—Purchasers can rescind for nonperformance of portion of contract and have lien for payments.**

   Purchasers of land in an arid country with a perpetual water right are not bound to accept the land alone, and recoup in damages, whether or

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not there is a party responsible in damages before the court, but are entitled in equity to a rescission, and to a lien on the land for the amount of payments already made by them.

**6. Vendor and purchaser ⊂⊃117—Purchasers' offer to surrender possession on return of payments is sufficient.**

Purchasers, who have gone into possession under their contract, do not lose their right to rescind for breach of the vendor's contract to furnish water because they remain in possession; it being sufficient that they offer to surrender possession on return of the payments already made by them.

At Law. Action by Henry D. Tudor, as trustee, against Joshua R. Raudabaugh and wife. On trial before court. Judgment rendered for defendants.

Philip S. Brown, of Missoula, Mont., for plaintiff.
Russell, Madeen & Clarke, of Missoula, Mont., for defendants.

BOURQUIN, District Judge. This action, commenced in March, 1920, is in ejectment, an equitable defense interposed, and of the aftermath of the First, etc., Bank v. Irrigation Co. (D. C.) 251 Fed. 320. Tried to the court, the evidence is without material conflict, and the controversy virtually dwindles to the issue of laches, defeating rescission.

It appears that in 1913, in the Bitter Root valley, the irrigation company was engaged in a very extensive development and sale of irrigated orchard lands. Its agents, "lecturers," screen pictures, and literature were of the typical "Wallingford" character, and spread far afield. All were artistic, alluring, forceful, and compelling to a degree that even now, the bubble burst, to view and read is to excite a well-nigh irresistible impulse to hasten thence and purchase. In that year, in Ohio, defendants entered into a contract with the irrigation company to purchase 40 acres of the land and a definite supply of water for irrigation, perpetually delivered (the land and water of this action), at the price of $12,500, in installments, to December, 1918, and $1.25 per acre per annum; conveyance upon last installment paid. The contract was induced by the irrigation company's willfully false representations, of which need be noted only that the company was solvent and of resources guaranteeing perpetual performance of the aforesaid covenant for water service.

In 1914 defendants entered upon the land, and yet continue in possession. Of the purchase price they paid $2,275, the last in January, 1915, and failed to pay the installments of December, 1915, and thereafter. From the beginning and continuously thereafter there was material failure to deliver the water of the covenant, to defendants' substantial damage, and of which they complained. The evidence satisfactorily proves this, even though defendants are inexperienced in irrigation and estimate of water flow, and their testimony indefinite.

In January, 1916, in this court, the irrigation company was adjudicated a voluntary bankrupt, the trust deed antedating this contract was put in foreclosure, and a receiver of all property subject to said deed, and which included this land and contract, was appointed. He

was also trustee in the bankruptcy proceedings. The cleavage between his dual official characters, possessions, duties, activities, and accounts was not clear, and was settled in final accountings. It does not appear that the receiver did anything in respect to this contract, other than to defectively perform the covenant for water as aforesaid.

The situation was involved and complicated, the law was not clear, and the status and relative rights of all interested parties were doubtful. In 1918 occurred the trust deed foreclosure sale, and Boisot purchased. In October of that year, upon deed to him, he transferred the lands and contracts to plaintiff, and the waters and irrigation system to the Ravalli Water Company, then incorporated, with capitalization of $100,000.

Plaintiff holds in trust, to sell lands and water, enforce contracts, and to distribute· proceeds. There is a remote possibility the water company will receive some of these proceeds, and it is obligated to maintain and operate the irrigation system. This system is extensive, some 70 miles long, servient· to some 20,000 acres of land, formerly the irrigation company's, of construction involving expensive operation, in decay, and to necessarily renew, to render economical, will cost $1,000,000 to $1,250,000, or $50 to $60 per acre of lands dominant to it.

. The water company neither has nor can procure the resources to perpetually maintain and operate the system, and has not, will not, and cannot perform the covenant for water service, save defectively to a material extent. So apparent is this that the vendees of these lands have organized an "irrigation district" to issue bonds, and, by some process, secure, maintain, and operate the system. The land of defendants' contract without perpetual water supply is of about $15 per acre in value, and with such supply, about $75 per acre.

In the fall of 1915 defendants discovered the falsity of the irrigation company's representations, and in 1919 offered to abandon the premises on return of payments by them made. More of the general situation and of the terms of the trust deed and the contracts, of which defendants' is one, may be gathered from the aforesaid report of the decision in the foreclosure suit. In view of the premises, it is believed defendants have not waived nor inexcusably delayed rescission, and are entitled to the relief sought.

[1] The fraud is obvious. In the arid country, of a land and water contract, the water is the more important. The value of the contract is mainly the covenant to perpetually supply water for irrigation, and so depends upon the responsibility of the covenantor. False representations in respect to this responsibility are material, and, relied upon, constitute fraud.

[2] From defendants' discovery of the fraud, in the fall of 1915, to the bankruptcy, foreclosure, and receivership proceedings in January, 1916, is too short an interval to constitute culpable delay. During these proceedings, and· until October, 1918, the court's officer was .in charge of the irrigation company's properties. It was expected that these proceedings would eventuate in a purchaser who would perform the covenants of the contracts in respect to delivery of water.

By privity of both contracts and estates he would stand in the shoes of the irrigation company, and by both obligated to perform these covenants, that not only run with the irrigation system and the lands, but are attached to them. Whether or not in this interval defendants might have rescinded and secured relief, their failure to do so, their standing inactive by, as did all others, including the court's officer, awaiting events and fulfillment of the expectation, is believed excusable.

Boisot purchased and immediately segregated the legal title to lands and contracts from the legal title to waters and irrigation system. He transferred both. Not a party to the suit, Boisot's responsibility need not be inquired of, nor to what extent the law of covenants continues his liability. It suffices that his transferees are a trustee of assets to be transferred, and a water company unable to perform the covenants.

[3] This becoming apparent in 1919, when it did fail to perform, the expectation aforesaid disappointed by the event, defendants' offer to rescind, then first made, was in time. Promptness to rescind is not a matter of time alone, but of circumstances, of which time is but one. Laches is not delay, but delay that injures the other party. Plaintiff has not been injured, but defendants have. They lost their bargain, time, and labor, and their hopes of an attractive and profitable home, of ease in age, and of a valuable inheritance to their posterity.

[4] That defendants continued to accept defective performance of the covenant does not constitute waiver of the right to rescind. It was without intent to waive, and to give time in which to remove the cause of failure, and to assure full and permanent performance in the future. Rescission is also warranted for failure in the main of the consideration for defendants' promise to pay.

[5] The contract is continuing and executory. Defendants are not bound to accept an undesirable fragment of the consideration, and recoup in damages, whether or not there is a party responsible in damages before the court. Equity awards rescission.

[6] That defendants remain in possession is not a bar to rescission. It is enough that they offered to restore what they received, upon return of what they had given. That is the local law, whether or not it is otherwise at common law, affected by the feudal principle.

Neither party seeks accounting of rents, profits, use, and occupation, or damages, and use of the money paid offsets use of the land received. Complete justice between the parties before the court can be done without the presence of the Ravalli Water Company, neither invoking its absence, though its rights, if any, will be unaffected by the decree. Defendants are entitled to a lien and its foreclosure upon the land and water, to the extent of payments by them made.

Decree accordingly.