## GOULD v. JAMES
(No. 1678; May 19, 1931; 299 Pac. 275)

162

The cause was submitted for appellant on the brief of *Wm. C. Snow,* of Basin, Wyoming.

The cause was submitted for the respondent on the brief of *Charles L. Brome and Thomas M. Hyde,* both of Basin, Wyoming.

BLUME, Justice.

This action was instituted by the plaintiff Gould against the defendant James, to cancel a deed of plaintiff's given to the defendant for 406.85 acres of land in Big Horn County, Wyoming, the land embraced therein having been traded for some land in Texas, the plaintiff claiming that he was induced to execute the deed by fraudulent representations made concerning the Texas land. After the execution of the deed, the land was sold, on contract, to Bert Snyder, who intervened in this action. The trial court cancelled the deed from plaintiff to defendant, did not disturb the rights of intervener, but directed him to make all payments under his contract to the plaintiff. From this judgment the defendant James has appealed.

1. It is contended that the evidence is not sufficient to warrant a decree setting the deed aside on the ground of fraud. This will necessitate a review of the testimony. We shall, however, only mention the salient facts.

The plaintiff, a farmer, owned the tract of land above mentioned, consisting of 406.85 acres in Big Horn County, Wyoming. In the spring of 1924, two men by the name of McDonald and Cooling, representing the defendant, or the Lone Star Immigration Company, approached the plaintiff

to purchase some land in Cameron County, Texas. According to the plaintiff's testimony, they extolled the character of the Texas land in every way, showing paintings and pictures of different fruit and vegetable farms. They represented to him that it was citrus-fruit land, raising a better grade of fruit than in California, though the land was cheaper, and stated that it was of the value of $350.00 per acre. They offered to trade plaintiff's land in Big Horn County, Wyoming, for some of the land in Texas, and induced him, at his own expense, to join an excursion to Texas, starting from Kansas City, some time in May, 1924. Other parties from Big Horn County also went. At Kansas City, other excursionists to Cameron County, Texas, joined them; they were induced to all go together in the same car, and one Pingilly, representing the Immigration Company, lectured to them, extolling the lands sought to be sold. Arriving at Huntington, Texas, they were met by cars, drove into the country for some distance, towards Brownsville, and stopped, where lunch had been prepared for the crowd, at a place owned by a man who had a citrus-tree farm, and who took the occasion—at whose behest is not shown—to give a talk on the ''possibilities of the country.'' They were taken to another citrus-tree farm, where they had the opportunity of learning that the owner thereof had just sold three acres of land for the sum of $3000.00. Other places, where citrus fruit was growing, were visited, and they got to Brownsville, Texas, at night, but instead of halting for rest they traveled to a community house of the Immigration Company, out about four miles, where they stayed for the night, and where they were regaled by music and a dance. The next morning plaintiff was taken out into the country, where the lands sought to be sold by the Immigration Company were located. He was shown what is called ''heavy-land,'' as distinguished from ''sandy'' land, but was told that after a year or so, this land would be better for citrus fruit than the sandy land, and he was assured by McDonald, the man above mentioned, that the land

could not be overflowed by the water from the Rio Grande river, which was nearby. Plaintiff thereupon selected Block 83, the west 20 acres of Block 84 and the west 20 acres in Block 89 of what is called the El Jardin subdivision in Cameron County, Texas, which was uncultivated, but contained a house just recently built. Plaintiff made a conveyance to the defendant James of his land in Big Horn County, Wyoming, subject to a mortgage of $8500, and received, in turn, conveyances for the tracts above described, made by one O. P. Hereford of Cameron County, Texas, subject to mortgages of $7291.00 in favor of the Nelson Loan Company, and executed notes of $2300 in favor of the James-Dickinson Farm Mortgage Company, secured by a "vendor's lien" on the lands conveyed to him. Plaintiff testified that in making the exchange he relied upon the representations made to him as above mentioned. He returned to Wyoming, but moved to Texas and onto the land which he had purchased in December, 1924. In the course of the following year, according to his testimony, after he had attempted to farm, learned something about the country, and attempted to plant some citrus trees, he discovered that the land sold to him was worthless or practically worthless for raising citrus fruit, and that it was worth about $50 per acre, instead of $350.00. In September, 1925, the land was flooded from the river to the depth of about three feet.

There is no testimony in the record to contradict the testimony of the plaintiff—in which he was to some extent corroborated by other witnesses—as to the representations made to him. It is true that defendant's testimony tends to show that the land was fit for raising citrus fruit, and that the land was worth the amount agreed to be paid by the plaintiff, but the credibility of the witnesses was for the trial court. Counsel for the defendant claims that the representations as to the value of the land and the fact that it was fit for raising citrus-fruit were matters of opinion, and not representations of fact. In 12 R. C. L. 278, however, it is said:

"It is also held that representations as to quality may be either expressions of opinion or statements of fact, and it is for the jury to say which they are. Misrepresentations of particular facts affecting the quality or condition of the thing sold are generally actionable. Fraud may be predicated of false representations that a certain privilege is annexed to land sold, or as to the character of improvements thereon, or that it is suitable for certain purposes."

In the case of Howe v. Martin, 23 Okl. 561, 102 Pac. 128, 138 A. S. R. 840, the representations made were that the land sold to plaintiff could be used, except two or three acres consisting of ravines; that it was suitable for a fruit ranch. The court said that the representations were "positive assertions as to matters which are not mere matters of opinion." In fact it has been held many times that misrepresentations of property as to fitness for certain purposes constitutes, or at least may constitute, actionable fraud. 27 C. J. 102. And in 12 R. C. L. 283, it is said:

"It cannot be laid down as a matter of law, that value is never a material fact, and there are many exceptions to the general rule, arising out of the special circumstances, under which the representations are made. For example, the rule applies only where the parties stand on an equal footing, and have equal means of knowledge, and there is no relation of trust or confidence existing between them."

It cannot be pretended in the case at bar that the parties stood on an equal footing. And in this connection it may not be uninteresting to note the case of Seimer v. James Dickenson Farm Mortgage Company and another, 299 Fed. 651, 653, affirmed in (C. C. A.) 12 Fed. (2d) 772. The Farm Mortgage Company in that case was the same farm mortgage company involved in the case at bar. Who the other defendant was does not appear in the reported case. In that case, as in this, the defendants were charged with fraudulent representations as to the character and value of lands in Cameron County, Texas. The course of dealing of the vendor was very similar to the course of dealing of the

defendant and his associates in this case. Misrepresentations like those in the case at bar, and others, appeared. The testimony showed that the value of the land was nothing, and the court so found, and it was held, among other things, that false representations as to the quality of land and as to the conditions of the soil are statements of fact, and actionable. Without citing further authorities, and without considering the effect of the representations relating to the overflowing of the land, we think that there is sufficient evidence in the record to warrant the court in holding that representations of fact were made to the plaintiff which were material and false, and sufficient to authorize the cancellation of the deed made by plaintiff to the defendant.

2. Counsel for the defendant contend that the plaintiff was guilty of laches, and that an agreement was entered into in 1925, whereby a compromise of all differences between the parties was effected. The testimony on that point is not at all satisfactory, either on the part of the plaintiff or of the defendant. The action herein was not commenced till December, 1928. But that is not necessarily a criterion of laches, if it cannot be said, on the whole, that the plaintiff failed to act reasonably promptly in rescinding the transaction. Delta L. & W. Co. v. Berry, 57 Cal. App. 314, 207 Pac. 393; Dietrich v. Rice, 124 Wash. 613, 215 Pac. 65. Apparently two separate negotiations were entered into between the parties after plaintiff went to Texas. One was for an exchange of the west 20 acres of block 89 for the north ten acres of block 86, and 9.85 acres in block 127. Plaintiff says in one place that the negotiations in this connection began in the spring of 1925. He is probably mistaken in this, and the negotiations in this connection probably did not take place till after the flood in September 1925, and after plaintiff had discovered that the land which he bought was not citrus-fruit land. In any event, he became dissatisfied, after discovering that the facts had been misrepresented to him, went to defendant's office, com-

plained, and was assured by the secretary of the Lone Star Immigration Company that everything would be satisfactorily settled, as every one else dealing with the company was dealt with so as to be satisfied. The testimony shows that plaintiff returned the deed to the west 20 acres of block 89; that he received, in turn, a deed for the 10 acres in block 86, and that he gave a "vendor's lien" to the James Dickenson Farm Mortgage Company on September 21, 1925, covering the tract in block 86, as well as the tract in block 127. This vendor's lien recites that these tracts had been conveyed to plaintiff by the last named company. Plaintiff, however, testified, positively, and in a number of places, that he never received a deed for the tract in block 127; that he frequently went to defendant's office and called for that deed; that the land was owned by Dickenson, and that after many trials, he was unable to obtain a deed for that tract. There is no direct denial of these positive statements. The secretary of the Lone Star Immigration Company testified that an exchange was made, in compromise of the differences between the parties, but he does not testify, at least directly, to the delivery of the deeds to the tracts last mentioned. And if we assume the plaintiff's testimony to be true, as we must for the purposes of this case, it is apparent that the negotiations as to the compromise were never carried out, and the long delay in giving the deed to the tract in block 127, after repeated requests, must be construed as a repudiation of the compromise, which plaintiff was not enabled to have specifically performed, if for no other reason than the fact that, as testified, the tract in block 127 was in Dickenson's name. The contention, therefore, that a compromise was effected cannot be sustained.

The testimony on plaintiff's part also shows negotiations as to an exchange for a forty-acre tract; that these negotiations continued into the summer of 1926, with apparent assurances to plaintiff at all times that everything would be satisfactorily settled. Plaintiff had many talks with Dicken-

son, and apparently some talks with defendant, though, as he says, he was not often able to reach the latter. The testimony shows that plaintiff went to defendant's office time and again without being able to effect the satisfactory arrangements which he had been assured would be made. Nor is this testimony contradicted in the record. Finally, not able to accomplish anything, plaintiff, so he stated, demanded back his land in Big Horn County, and offered to return the Texas land. The time is not definitely indicated. It was evidently in the summer or fall of 1926. He placed his claims in the hands of an attorney in Texas, who at least once conferred with the defendant, or those in his office, and plaintiff was assured that a proper settlement would be made. He left in the spring of 1927, continued correspondence in connection with his claims with the attorney in Texas. Being unable to accomplish anything by this means, he took the matter up with attorneys in Big Horn County, Wyoming, who, too, attempted to get an adjustment of the matter. When they failed in their efforts, this suit was started. It is accordingly clear that plaintiff never, up to the very time of bringing this suit, definitely indicated that, after discovering the fraud, he elected to retain the property in Texas, and that he was lulled into security by repeated statements of the defendant or the men connected with him. It is said in Cooper v. Huntington, 178 Cal. 160, 172 Pac. 591, under similar circumstances, that such assurances estop the vendor from setting up the defense of laches. The subject of laches is fully discussed in the case of Baylies v. Vanden Boom, 40 Wyo. 411, 440, 278 Pac. 551, 70 A. L. R. 924, and whatever we ourselves might have done, if we had tried the case, we are not, under the authority of that case, and the authorities therein cited, warranted in setting the judgment of the trial court aside on the ground that it should have found the plaintiff guilty of laches. It is said in Tudor v. Raudabaugh, (D. C.) 278 Fed. 254, that laches of a buyer is not mere delay in rescinding, but is delay which injures the other party. It does not

appear herein that up to the time that definite notice of rescission was given by plaintiff, the defendant and those interested with him were injured in the least.

3. It is also contended that the Lone Star Immigration Company was a necessary party herein, and that the decree should have made definite direction as to the notes of $2300 given by plaintiff. The record shows a peculiar situation in regard to the parties interested adversely to the plaintiff. The contract of trade was entered into between plaintiff and the Lone Star Immigration Company. The deeds to plaintiff or his wife were made by O. P. Hereford; the vendor's liens were made in favor of the James Dickenson Farm Mortgage Company; the deed to the land in Big Horn County, Wyoming, was made to the defendant James. Plaintiff testified that the two companies above mentioned and Dickenson and James, chief officers thereof, were all really one and the same party, and, without explanation, that would seem to be true. It would seem that James received the deed made to him as representative or substitute for the party with whom plaintiff was dealing, and that seems to be true in connection with the vendor's liens given to the James Dickenson Farm Mortgage Company. The rescission of the transaction herein could not be defeated simply through the variety of parties with whom the plaintiff was caused to deal. The court in Seimer v. James Dickenson Farm Company, supra, in commenting on this variety, which was nearly the same as in the case at bar, said:

"When the Lone Star dealt with the Texas corporation or with the Missouri corporation, and when either or both of the other companies dealt with it or with each other, Dickenson and James dealt with themselves. Being the executive officers of the three corporations, as well as the substantial owners thereof, they, in three different capacities, necessarily dealt, conversed, planned and designed with themselves, merely performing their individual activities through three different nominal legal entities, all constituting a part of a single comprehensive activity, for

whom the two men were responsible and from which the same two men would lose or profit.''

While, doubtless, the Lone Star Immigration Company would have been a proper party herein, we do not think it was a necessary party. Nor was that question properly raised in the trial court. And the fact that the court made no direction, specifically cancelling the notes for $2300 given by the plaintiff, which, doubtless, should have been done, at least if the James Dickenson Farm Mortgage Company had been made a party, is no ground, we think, for setting the judgment of the trial court aside.

4. There were mortgages on the lands deeded to the plaintiff or his wife, as already stated, in favor of the Nelson Loan Company. These mortgages were foreclosed in March, 1928, and it is contended that restitution, on the part of the plaintiff, was, accordingly, not possible. These foreclosures, however, were long after the plaintiff had definitely informed the defendant of his rescission, and could not, we think, affect the situation herein.

5. The petition herein does not offer, and the decree does not direct, the return of the tract in block 86. Plaintiff, however, in his demand on the defendant, offered to return whatever land he had, and the inclusion of the tract above mentioned in the petition and decree was evidently merely an oversight. The decree should, accordingly, be amended, directing, upon demand, the execution of a quitclaim deed to all of the lands in Texas which were deeded to plaintiff or his wife.

We find no reversible error in the record, and the decree of the trial court should accordingly be modified as above mentioned, and as so modified should be affirmed. It is so ordered.

*Modified and Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.