H. O. BEADLE and F. E. Mundell,
Appellants (Defendants below),

v.

Walter E. DANIELS, on behalf of himself, and all other interest holders in the Cotton oil and gas lease upon lands in Weston County, Wyoming, Appellee (Plaintiff below).

No. 2972.

Supreme Court of Wyoming.

May 17, 1961.

 

---

Beatrice Raymond, Newcastle, and Alan L. Austin (of Austin, Hinderaker & Hackett), Watertown, S. D., for appellants.

Thomas L. Whitley (of Halsey, Whitley, Hollaway & Liamos), Newcastle, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

According to the undisputed evidence and party stipulations in this case, the plaintiff and other interest holders owned working participating interests in an oil and gas lease covering lands in Weston County, Wyoming, and known as the Cotton lease. The interests were sold by Progressive Drilling Company, a corporation, under separate but identical contracts called *Contract for Conveyance of Interest in Oil and Gas Lease, and for Operation and Development Thereof.* Said corporation was designated in each contract as the operator, and the interest purchaser was referred to as nonoperator. In general, the operator was vested with authority to perform all drilling and oil and gas operations with the provision that "said Operator shall charge Non-operator with his proportionate share of the expenses and costs incurred thereon." In addition there was a specific provision that if at any time a pumping unit is required, "Operator shall charge Non-operator with his proportionate share of the expense and cost of such pumping unit."

The need for a pumping unit for one of the wells arose. In order to supply it, the defendant F. E. Mundell, who was president of Progressive Drilling Company, and the defendant H. O. Beadle, who was executive vice-president thereof, found and purchased from an abandoned lease, at a sacrifice or very low price, considerable production equipment, including a pump jack and sucker rods which were needed for and which were used on the Cotton lease. Said pump jack and rods were supposedly sold to Progressive Drilling Company for said Cotton lease at a price of $6,400, being $5,000 for the jack and $1,400 for the rods.

The entire lot of equipment purchased by Mundell and Beadle cost them $5,600, including the cost of recovering it from the abandoned lease and hauling it. In addition to the portion used on the lease here involved, they either resold or themselves made use of considerable other equipment. If the materials used on the Cotton lease were valued at $6,400, they would have obtained $10,835 for all of the equipment.

It is claimed on behalf of defendants that the reasonable and fair market value of the material used on the Cotton lease was $6,400. Said defendants maintain that they had a right to sell this portion of the material to the Progressive Drilling Company at its market value of $6,400 and that such company in turn could charge interest holders in the Cotton lease on the basis of such a price. Appellee on the other hand contends, and the trial court so held, that defendants because of their fiduciary relationship toward the plaintiff and other interest holders could not profit from the transaction insofar as the Cotton lease material was concerned. There was no evidence that the matter of acquiring the material by Progressive Drilling Company from the defendants was ever considered, discussed or approved at a meeting of the board of directors or stockholders of said company. Rather, as the trial judge found, the negotiations and agreement for the purchase of the equipment were made and carried out by the defendants in a dual capacity, i. e., as officers and directors of the corporation in buying the material and as individuals or partners in selling it. No other persons were present. No record or entries were made in the corporate minute book reflecting the transaction.

The operating agreements here involved do not permit operator to charge for pumping equipment on the basis of its market value. According to each contract, operator was to charge nonoperator with his proportionate share of the *expense and cost*. That does not mean market value; it means that Progressive Drilling Company as operator was entitled to charge the actual cost only for the pump jack and sucker rods which were used on the Cotton lease. Mundell and Beadle were the chief executive officers of said company. It necessarily follows, therefore, that their actions in purchasing such pumping equipment and placing it on the Cotton lease were the actions of the corporation itself. They were agents of the corporation, and the corporation was agent for the interest holders.

■■ ■■ This court has heretofore held that the directors of a corporation are its agents. In Nicholson v. Kingery, 37 Wyo. 299, 261 P. 122, 123–124, this was said:

"The directors of a corporation are its agents, and in their dealings with and for the corporation are held to the same strict rule of honesty and fair dealing between themselves and their principal as other agents. * * *

* * * * * *

"Since in this case the defendant directors offered no testimony to overcome the presumption of fraud imposed upon them by law from the fact that they were acting both for themselves and the Investors' Guaranty Corporation, we need go no farther than to hold that when it is shown by competent evidence that a director of a corporation acted both for himself and for the corporation * * * the burden of proof is cast upon him to show by clear, convincing evidence that the transaction was open, fair, and honestly made and that he did not profit by such sale to the disadvantage of the corporation."

As agents then, it is clear that directors occupy a fiduciary relationship with regard to the corporation and persons represented by it. They stand in a position similar to that of a trustee, and it is a well-settled rule that such a trustee can make no profit out of his trust. Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151, 156; Young v. West Edmond Hunton Lime Unit, Okl., 275 P.2d 304, 3 Oil and Gas Reporter, p. 1736 (1954), appeal dismissed 359 U.S. 909, 75 S.Ct. 600, 99 L.Ed. 1245; Angelus Securities Corporation v. Ball, 20 Cal.App. 2d 436, 67 P.2d 158; Elggren v. Woolley, 64 Utah 183, 228 P. 906; 13 Am.Jur. Corporations § 998, pp. 950–951 (1958); 19 C.J.S. Corporations § 786, pp. 161–162.

■■ The rule precluding a director from deriving a profit from the corporate business is especially applicable where the corporation itself is a trustee. Chicago, Milwaukee & St. Paul Railway Company v. Des Moines Union Railway Company, 254 U.S. 196, 41 S.Ct. 81, 65 L.Ed. 219; H. B. Cartwright & Bro. v. United States Bank & Trust Co., 23 N.M. 82, 167 P. 436; 19 C.J.S. Corporations § 786, pp. 161, 164 (1940). In the instant case the defendants, because of their fiduciary relationship, are prohibited from selling at a profit that which they sell on their own account, especially since the transaction was carried out without the knowledge and consent of other parties concerned. They are not allowed to unite the two opposite characters of buyer and seller, because the interests are directly conflicting. Young v. West Edmond Hunton Lime Unit, supra; Michoud v. Girod, 4 How. 503, 45 U.S. 503, 11 L.Ed. 1076, 1099.

If, as we have said, the acts of the president and executive vice-president of the corporation, Progressive Drilling Company, are in this instance acts of the corporation itself, then the cost to them for the material in question must be held to be the cost to the corporation as operator. Counsel for the defendants complain that the entire transaction was involved and complicated and the exact cost cannot be ascertained. That, however, does not change the equities or permit a different basis of assessment to interest holders. The district

court found that $5,600 including recovery expense and hauling was paid for all equipment purchased. It would have brought on resale or use $10,835, if the Cotton lease interest holders were left with a charge of $6,400. Thus, the total resale price would be composed of 51.68 per cent as cost and 48.32 per cent as profit.

Taking the position that defendants could profit on the material which was sold or used elsewhere but that they could not profit on the material used upon the Cotton lease, the trial court assumed that the $6,400 pretended charge, like the overall resale price, was also composed of 51.68 per cent cost and 48.32 per cent profit. The amount of this profit, $3,092.48, was considered an overcharge and judgment was given for plaintiff against the defendants for that amount. The formula is not exact. There is no way of telling to a certainty what portion of the overall material went into the Cotton lease and what portion went elsewhere. However, if we used a different formula, the result would be substantially the same. In the absence of another formula being suggested by defendants for fixing the cost to them of the Cotton lease material, we approve the one used as being fair and equitable.

Taking the position as we do that the respective operating agreements are controlling and that the interest holders can be charged only on the basis of actual cost for production material, it becomes unnecessary to consider appellants' suggestion that said agreements created a mining partnership and that a partner may sell property to the partnership for a fair market price.

██ ██ The action in the case at bar was commenced a little less than four years after the cause of action arose. The defendants contend this period of delay in bringing the action was unreasonable under the doctrine of laches and that plaintiff was estopped from maintaining the suit. The rule supported by the weight of authority is that delay in asserting a right does not of itself constitute laches. Other facts and circumstances must be shown before the rule can operate as an estoppel. Unless the delay has worked injury, prejudice or disadvantage to the defendants or others adversely interested, it is not of itself laches. Eblen v. Eblen, 68 Wyo. 353, 234 P.2d 434; Gould v. James, 43 Wyo. 161, 299 P. 275; Anderson v. Wyoming Development Co., 60 Wyo. 417, 154 P.2d 318; Baylies v. Vanden Boom, 40 Wyo. 411, 278 P. 551, 70 A.L.R. 924. Viewing the evidence in its most favorable light, we do not consider that the delay has worked any injury, prejudice or disadvantage to the defendants. According to findings of the trial judge, there is no showing that evidence has been lost or obscured; that plaintiff abandoned or waived his right; that the delay was culpable or due to lack of diligence; or that the delay was such as to practically preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy.

A more serious problem is how will the judgment in this case affect the rights of persons belonging to the same class as plaintiff. The action was brought by Walter E. Daniels, on behalf of himself, and all other interest holders in the Cotton oil and gas lease upon lands in Weston County, Wyoming. At the trial Plaintiff's Exhibit No. 5 was received in evidence, and parties stipulated that it contained a list of the interest holders in the Cotton lease. Although the appellants suggest that some transfers of interest were made subsequent to the time the material in question was charged for and prior to the trial of the case, we have not been asked to decide whether those persons who were interest holders at the time of the transaction or those who were interest holders at the time of trial are the real parties in interest. That could probably be determined only from the respective transfer instruments and they are not contained in the record on appeal. Appellants do contend, however, that the interest holders in any case do not have a common or general interest and that Daniels could not maintain a class action. Under our rules of procedure, as set out in Rule 23(a) (3) of the Wyoming Rules of

Civil Procedure, such a class or representative action is authorized when the character of the right sought to be enforced for the class is "several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

It would serve no purpose to discuss what the common law rule may have been or what the procedure may be in other jurisdictions. We know we are dealing with rights which are several, as evidenced by the fact that each interest holder has a separate contract. However, there is clearly a common question of law and a common question of fact, and a common relief is sought. The purpose of Rule 23 is to prevent a multiplicity of suits, and we would be defeating that purpose if we failed to give it effect in a clear case of this kind. Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188; Brenner v. Title Guarantee & Trust Co., 276 N.Y. 230, 11 N.E.2d 890, 114 A.L.R. 1010; State ex rel. Tharel v. Board of Commissioners of Creek County, 188 Okl. 184, 107 P.2d 542; 67 C.J.S. Parties § 13, pp. 918, 919.

Although a class action is authorized in such a case as this, we must be cognizant of the effect the judgment rendered will have. In this case it is not such a judgment as would be rendered in a suit for declaratory judgment where the rights and legal status of parties may be adjudged. It is a money judgment given to a single agent or trustee on behalf of himself and others. Not only is said agent a self-appointed trustee but he is not under bond. The judgment is silent with respect to such questions as to who shall collect and distribute the $3,092.48 and who shall release and satisfy such judgment when paid.

In an earlier case from North Dakota, Kvello v. City of Lisbon, 38 N.D. 71, 164 N.W. 305, 310, 311, it was said that a person could not be compelled to be a plaintiff in a lawsuit without his consent. The case had to do with the enjoining of a treasurer from collecting an assessment. Both with respect to parties specifically named and those only generally referred to the court said, "They should come in in some way and accept the benefit of the judgment or claim under it." The cause in that instance was remanded with directions to enter judgment for the plaintiff, and also for "such of the other parties whose names and property are mentioned in the said complaint, and who shall make application to the court to come under the judgment, and who shall prove themselves entitled thereto."

In a more recent case in Utah, Salt Lake City v. Utah Lake Farmers Association, 4 Utah 2d 14, 286 P.2d 773, 779–780, consideration was given to a rule of procedure identical to our Rule 23, supra. It was pointed out that the rule dealt with three different types of actions—the true, the hybrid and the spurious. Not only do the class actions permitted differ in the character of the rights sought to be enforced, but they also differ in the effect that the judgment rendered in the action will have upon the members of the class who are not parties to the action. In that connection the following distinctions were made by the Utah court:

" * * * (1) The true representation class action involves the enforcement of a right which is joint, common or secondary, the judgment in such case will affect similarly all members of the class and should be conclusive and binding on all such members the same as if they were parties to the action. (2) The hybrid representation class action involves the enforcement of rights which are several, where the object of the action is the adjudication of claims which affect specific property impounded in the action. It is conclusive on the members of the class not parties to the action only in disposing of such specific property. (3) The spurious representation class action involves the enforcement of rights which are several where there is a common question of law or fact. It is conclusive and binding only on the parties to the action. The real justification for this type of action is its convenience in litigating numerous individual claims in one action. It is really an invitation to all persons similarly situated to join in the

action and litigate their several claims but, except to the extent that common claims are litigated, it has no binding effect on the members of the class who are not parties to the action. In such a case intervention should be freely granted."

■ In a "true" class action, the judgment is conclusive on absent members of the class represented. In a "hybird" class action, it is conclusive on members of the class represented, only as to rights in a *res*, if any. In a "spurious" class action, the judgment is conclusive only on the parties joined and before the court. See Shipley v. Pittsburgh & L. E. R. Co., D.C.Pa., 7 F.R.D. 744; Hansberry v. Lee, 311 U.S. 32, 61 S. Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; 2 Barron and Holtzoff, Federal Practice and Procedure, § 572, pp. 195, 196 (1950).

In Hunter v. Southern Indemnity Underwriters, D.C.Ky., 47 F.Supp. 242, 244, a plaintiff on behalf of himself and other bondholders asserted the right to maintain an action as nothing more than a "spurious" class action under Rule 23(a) (3), Federal Rules of Civil Procedure, 28 U.S.C.A., from which our own Rule 23(a) (3) has been adopted. The court found that the liability of the defendant ran severally to each of the bondholders, and that the only interest in common among the numerous bondholders was the common interest in some of the questions of law or fact involved. Upon this finding, it held:

"* * * Without more, no judgment or other proceeding herein could be binding upon or affect in any way the rights of any persons other than those who are or may become actual parties to or participants in the litigation. Absent bondholders would be entirely free to deal with their own rights in their own way. To entitle plaintiff to stand in judgment for them or to bind them by representation, the requirements of due process are more exacting. * * *"

It has been held that the judgment in the "spurious" type class of action is not binding as in the "true" class action, upon the entire class. It binds only those actually before the court. If parties voluntarily come in as interveners under the plaintiff's complaint, they would be bound under the rules of *res judicata,* but if such parties refuse or neglect to enter the suit, preferring to institute their separate suits, the judgment cannot be held to bind them. See Albrecht v. Bauman, 76 U.S.App.D.C. 189, 130 F.2d 452; Cooper v. Goldsmith, 77 U.S.App.D.C. 392, 135 F.2d 949; Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387; 3 Moore's Federal Practice, 2d Ed., § 23.11(3), p. 3465 (1948).

■ Since this case relates to the enforcement of rights which are several but grow out of common questions of law and fact, it is a spurious class action and the doctrine of *res judicata* will apply only to those who are before the court. Apparently both the present plaintiff and defendants know the names and perhaps the whereabouts of those persons who were interest holders at the time of the transaction complained of, and also what assignments of interest have been made since that time. It would therefore have been proper if the trial court at an appropriate time, perhaps at pretrial conference, had made inquiry and thereafter caused proper notice to be given to all of the real parties in interest. This omission is not irremediable and notice should now be given. Those interest holders who express a desire to intervene should be allowed to do so during a time and under circumstances which the trial court deems to be reasonable.

If any of the interest holders fail to intervene, the amounts which would have been due them should be deducted from the judgment. Although their right of action in the matter will not thereafter be foreclosed, the fact of their nonintervention should be seriously considered by the court in the event they request an allowance for costs or expenses in any later proceedings.

In the present action, all of the costs and expenses of litigation which are not assessed against defendants should be borne by the interest holders in proportion to the amount

which each will receive by reason of the judgment.

The cause is remanded for further proceedings in accordance with the views herein expressed.