667 F.2d 942
 Samuel S. GARFIELD and Allard Roen, Plaintiffs-Appellants,
v.
TRUE OIL COMPANY, a partnership, H. A. True, as a general
partner of True Oil Company, Jean D. True, as a general
partner of True Oil Company, and Toolpushers Supply Company,
a corporation, Defendants-Appellees.
 No. 81-1222.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Sept. 28, 1981.
Decided Jan. 7, 1982.
 
 Richard J. Stall, Jr., of Smith, Stall, Goldstein & Boserup, Los Angeles, Cal. (Urbigkit & Whitehead, P. C., Cheyenne, Wyo., with him on the brief), for plaintiffs-appellants.
 Richard E. Day, of Williams, Porter, Day & Neville, Casper, Wyo. (R. Stanley Lowe, Casper, Wyo., with him on the brief), for defendants-appellees.
 Before SETH, Chief Judge, BREITENSTEIN, Circuit Judge, and KUNZIG, Judge*.
 SETH, Chief Judge.
 
 
 1
 This was a suit on a Net Profits Contract brought against the entities having the obligation to develop for oil and gas the property covered by the net profits agreement. The plaintiffs asserted that the accounting for the sale or transfer of oil field equipment was not in accordance with the contract and also that the sale of production by the operator was to an affiliate which resold it at an increased price.
 
 
 2
 The trial court found for the defendants concluding that they had performed the contract in accordance with its terms. The plaintiffs have taken this appeal.
 
 
 3
 In 1958 the plaintiffs and a predecessor in interest of plaintiff Roen owned working interests under oil and gas leases in the Clareton Field in Weston County, Wyoming. The defendant True Oil Company, a family partnership, owned similar interests. The plaintiffs (and the predecessor) agreed to and did assign their entire working interests in the field to True Oil Company. Plaintiffs also conveyed to defendants all their interest in oil field equipment and supplies in the field. This equipment included casing in the wells, tubing, rods, valves, and other field equipment. The defendants paid an agreed dollar amount for the equipment. The plaintiffs in the assignment of the leasehold interests reserved a fifty percent net profits interest. The net profits interest was described in separate net profits contracts with attached P.A.S.O. accounting procedure forms. The accounting forms used were designed for joint lease operation rather than for the arrangement contemplated by the Net Profits Contract. The defendant True Oil Company undertook to conduct the operations on the leaseholds which was to be a waterflood project under a unit agreement.
 
 
 4
 Under the net profits interest reserved by the plaintiffs and the contractual relationship created the plaintiffs had no property interest in the oil field equipment and supplies and had assigned all their interest under the leases. They had reserved only "fifty percent (50%) of the Net Profits ... realized from the production and marketing of oil and gas." For the purposes here concerned the interest of plaintiffs was purely contractual. They had no ownership in the leasehold nor in the equipment. The rights and obligations under this arrangement are described in the "Net Profits Contract," and are well established by practice as developed in this record. However, the matter is complicated somewhat by the joint lease operation accounting procedure attached to the contract. All the individual parties had very long experience in oil and gas development.
 
 
 5
 The plaintiffs under the relationship created by the contract were entitled to have the property operated in a prudent manner, to have only reasonable charges made to the net profits account, to have accountings provided to show the status of the accounts, and to have the operator deal with them fairly. The specifics were to be handled in accordance with the terms of the contract. As to the accounting procedure form attached to the contract, it was provided that the accounts be kept "as nearly as possible" in accordance therewith. It was agreed that in the event of a conflict between the Net Profits Contract and the accounting procedure the contract would prevail. It is apparent from the testimony and the contract that the joint lease operations accounting form could not be fully applied.
 
 
 6
 The acreage covered by the contract between the parties was included in a unit formed for the waterflood and was to participate therein. The defendant True Oil Company was the operator of the unit. The unit operation as such is not involved in this dispute and we are not concerned with whether the parties were operators or non-operators of the unit. We are concerned with the debits and credits to the net profits account, the obligations arising from the contractual relationships created by the contract and from the ownership of the working interest and the equipment. It was not a joint operation or operation of jointly owned interests nor a unit operation. The parties provided in the contract that the arrangement was not a joint venture nor a partnership. It was the creation of a net profits interest and that only.
 
 
 7
 The plaintiffs place great reliance on a Supreme Court of Oklahoma opinion written by Justice Welch in 1954 which held that a fiduciary relationship existed between a unit operator and a royalty owner. (Young v. West Edmond Hunton Lime Unit, 275 P.2d 304 (Okl.).) This was later referred to as a duty arising in the handling of the royalty owners' "affairs." Olansen v. Texaco, Inc., 587 P.2d 976 (Okl.). Both Oklahoma cases refer to a unit created by Oklahoma statutory authority. The relationship so created wherein the operator does handle the property and affairs of the royalty owners can place a different duty on the operator. The Oklahoma units were created by statute regardless of the interest owner's consent. The circumstances in the case before us wherein the plaintiffs have no property interest in the leaseholds, no working interest, and no ownership of equipment, no right to take in kind, create a relationship somewhat different from that described in the Oklahoma cases referred to above.
 
 
 8
 The defendants are here "handling" their own property and none belonging to the plaintiffs. The typical trust relationship thus does not arise. Instead the duties and obligations arise from the contractual provisions and the relationship so created. The duties of defendants were and are substantial, and the requirement of good faith in the operation of the property is clear. This does not however create a "fiduciary relationship" as the term is ordinarily used. LeBus v. LeBus, 269 S.W.2d 506 (Tex.Civ.App.); and see Southwestern Legal Foundation 19th Oil & Gas Inst. 165, at 179. The Conclusion of Law on this point (No. 6) by the trial court is thus so modified.
 
 
 9
 The conveyances and the Net Profits Contract thus determine the nature of the transaction. The accounting procedure form does not purport to define the relationship of the parties and cannot do so as the plaintiffs urge. It is no more than the guide for the maintenance of the net profit accounts "as nearly as possible." The insertion of this condition was necessary in view of the selection of a form which was designed for another use. The trial court, using the evidence presented, determined what portions of the accounting form should be used in keeping the accounts and so applied it "as nearly as possible."
 
 
 10
 The term "non-operator" is usually applied to a working interest owner who has under a contractual arrangement (or by statute) delegated the duty to conduct the operations on the subject property to another working interest owner. The term does not refer to an owner of an overriding royalty nor to an owner of a net profits interest. The trial court using the evidence before it thus reached its conclusion that the plaintiffs were not within the term "non-operator," and so properly construed the accounting form. The form also refers from time to time to "joint owners" but plaintiffs were instead owners of a net profit interest.
 
 
 11
 The trial court, in the light of the evidence, concluded that the accounting procedure could be used and should be used to determine charges to the net profits account for the sale of oil field equipment. This determination was in accord with the procedure and the evidence. The same must be concluded as to the "warehouse account."
 
 
 12
 "19. The transfer and sale of equipment, material and supplies from the Clareton Union complied with the terms of the written agreements between the parties. The accounting method used was in accordance with the agreements between the parties and the proper amounts were credited to the net profits account."
 
 
 13
 The plaintiffs urge that the opinion in Beadle v. Daniels, 362 P.2d 128 (Wyo.), should lead to a different result. However, the cited case concerns the duties of officers and directors of a corporation to the corporation and the doctrines which prohibit personal profit in dealing with the corporation. The case is significant and the corporation there concerned was a unit operator, but the case is not otherwise directed to the problem before us.
 
 
 14
 The oil produced from the net profits acreage was sold at the prevailing or posted field price. The production was sold to TOPCO, a company affiliated with the defendants. There was however no breach of good faith in such sales for the reason that the price was the prevailing price in the field. The duty to deal in good faith obviously required that the production be sold at the going price in the field. The trial court found:
 
 
 15
 "21. The prices paid by True Oil Purchasing Co. (Topco) for the Clareton Unit production were equivalent to the posted prices in the area as set by other major oil companies. Said prices were also in accordance with Department of Energy regulations. True did not profit unjustly from said sales."The fact that TOPCO resold the oil to others at a profit is of no consequence in this action. It is apparent that gatherers and first purchasers sell or trade to others at an increased price. If the posted field price was used in the accounting the defendant thereby met the good faith requirements.
 
 
 16
 We must agree with the trial court on the matter of accountings required under the contract to be furnished plaintiffs and the absence of any damages. The trial court found, and it is supported by the record, that:
 
 
 17
 "17. No accountings were furnished by True to Garfield from 1958 until October 26, 1976. Garfield or Roen never requested an accounting from True until a letter was sent by Garfield on October 26, 1976 inquiring about an accounting. From that date on, True furnished adequate accountings and made all books and records in his possession available for inspection.
 
 
 18
 "18. The unit has operated at a significant loss since its inception and is currently operating in the red although the losses have decreased dramatically due to current market conditions. Therefore, Garfield and Roen suffered no damages due to True's lack of accounting. The fact that no requests for an accounting were made until 18 years later substantiates the point that Garfield and Roen themselves were not concerned about the lack of accounting."
 
 
 19
 We have considered the other points raised by the appellants and find them to be without merit.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable Robert L. Kunzig, Judge of the United States Court of Claims, sitting by designation